# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

**JERRY SIMPSON**                                                                                          **PLAINTIFF**

**v.**                                        **No. 3:15-CV-00257-JTR**

**CAROLYN W. COLVIN,**
Acting Commissioner,
**Social Security Administration**                                                           **DEFENDANT**

## ORDER REMANDING TO THE COMMISSIONER

Jerry Simpson ("Simpson") applied for social security disability benefits, alleging a disability onset date of July 6, 2012. (R. at 126). Simpson requested a hearing before the administrative law judge ("ALJ"), and the ALJ denied benefits. (R. at 11, 20). The Appeals Council declined review. (R. at 1). Simpson then requested judicial review.

For the reasons discussed below, this Court reverses and remands the Commissioner's decision.

**I.      The Commissioner's Decision**

The ALJ found Simpson to have the severe impairments of diabetic neuropathy, morbid obesity, diabetes mellitus, anxiety, and cellulitis of the left hand (postoperative). (R. at 13). The ALJ then found that Simpson had the residual functional capacity ("RFC") to perform light work with additional limitations. (R. at 14). The RFC provided that: Simpson could not climb ladders or be around

unprotected heights due to obesity; he could occasionally handle items with his left upper extremity (the non-dominant hand) and could use his left hand as an assistive device only; he was limited to work where interpersonal contact would be no more than incidental to the work performed, and the complexity of the work was limited to one or two step tasks that could be learned and performed by rote with few variables and little judgment; he required simple, direct, and concrete supervision; and he was limited to work that could be learned within 30 days. (R. at 14). After hearing testimony from a vocational expert ("VE"), the ALJ found that Simpson could return to his prior work as a molder press operator. (R. at 19). The ALJ also found that Simpson could perform other jobs such as light line packer or marking clerk. (R. at 20). Thus, the ALJ concluded that Simpson was not disabled.

**II.     Discussion**

Simpson maintains that the ALJ erred: (1) in his RFC assessment, which is not supported by the record; (2) in failing to include impairments in his hypothetical questions to the VE; and (3) in failing to require the VE to resolve an apparent conflict between Simpson's RFC and the physical demands of the representative occupations.

This Court will uphold the Commissioner's decision if it is not based on legal error and is supported by substantial evidence on the record as a whole. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence" is "less than a

preponderance, but enough that a reasonable mind would find it adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

### A. The ALJ's RFC Determination

Simpson contends that he cannot stand and/or walk for six hours in an eight-hour workday as required to perform at the light exertional level. He further argues that the ALJ failed to include non-exertional limitations in determining his RFC and that, in arriving at his RFC determination, the ALJ relied on Simpson's activities of daily living, which do not support his alleged capacity to perform light work.

Simpson testified that he had pain in his feet. (R. at 34). He also testified that he probably could not manage a job that required him to stand for thirty minutes at a time. (R. at 42–43). He and his wife both reported that he loses his balance easily, gets dizzy, and can walk around the block before needing to rest. (R. at 190–207). The Commissioner argues that Simpson did not complain of these difficulties to his physicians.

The majority of the evidence supporting Simpson's contention that he cannot be on his feet for six to eight hours per day comes from Simpson and his wife's testimony and reports. Simpson reported leg pain to one doctor, but none of his treating physicians opined about his exertional level. One treating physician stated the opinion that Simpson was not disabled but stated in the same report that

Simpson could not yet return to work. (R. at 466–67). Simpson's physician observed that he could walk without assistance, but that is the extent of the medical findings concerning his ability to stand or walk. (R. at 467). The ALJ's findings rely most heavily on his evaluation of Simpson's credibility.

"[T]he ALJ may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole." *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005). When determining the credibility of a claimant's subjective allegations of pain, the ALJ must examine: (1) the claimant's daily activities; (2) the duration and intensity of the pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Miller v. Sullivan*, 953 F.2d 417, 420 (8th Cir. 1992) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (1984)). The ALJ may not discount subjective complaints simply because they lack support in the medical record. *Id.* "When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the *Polaski* factors." *Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998). The Court defers to the ALJ's credibility determination if it is supported by good reasons and substantial evidence. *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014). However, "an ALJ may not circumvent the rule that objective evidence is not

needed to support subjective complaints of pain under the guise of a credibility finding." *Penn v. Sullivan*, 896 F.2d 313, 316 (8th Cir. 1990).

The ALJ did not properly determine Simpson's credibility. The ALJ stated that Simpson's daily activities "are certainly not indicative of an individual who is completely unable to work." (R. at 15). Simpson's daily activities, which created the alleged inconsistencies with his testimony, were: watching television; playing with and walking two puppies; visiting with his mother; maintaining personal care; taking out trash; riding in a car; shopping with his wife; counting change; performing some household chores without help or encouragement; spending time with others; finishing tasks; getting along with others; and following written and spoken instructions.

The Eighth Circuit has held that light housework and other such activities alone do not support a finding that a claimant can perform full time competitive work. *Baumgarten v. Chater*, 75 F.3d 366, 369 (8th Cir. 1996). The Commissioner cites to *Wagner v. Astrue*, 499 F.3d 842 (8th Cir. 2007), to support the contention that the ALJ properly discounted Simpson's credibility. However, the activities of daily living reported in *Wagner* were considerably different from those reported by Simpson. For example, in *Wagner*, the claimant reported that:

> [H]e "regularly" does the laundry, dishes, changes sheets, takes out the trash, and does home repairs. He acknowledged at the hearing before the ALJ that "[d]ay to day chores are not a real problem" for him. . . . [H]e noted in the questionnaire that he (1) "almost daily"

5

>prepares meals at the home; (2) does the grocery shopping and other household shopping without assistance; (3) goes to the bank and to medical appointments without assistance; (4) drives two to three times per week; (5) enjoys working on the computer, watching TV, and reading a variety of magazines and newspapers; (6) visits friends at their residences or at public meeting areas a couple of times per week; and (7) gets involved socially on a weekly basis.

*Id.* at 852. These activities far exceed the more limited activities reported by Simpson and his wife. Simpson's activities of daily living do not support the RFC for light work, and there is insufficient medical evidence to show that he is capable of standing and/or walking for six to eight hours per day.

Simpson also maintains that the ALJ did not account for non-exertional limits identified during a consultative psychological evaluation. The consultative examiner noted that Simpson's "memory functioning and reported physical problems would interfere significantly with [his] ability to complete assigned tasks without ongoing supervision." (R. at 432). The ALJ summarized these findings, but did not specifically assign weight to the consultative examination. (R. at 18). The ALJ limited Simpson to unskilled work, but Simpson contends that this does not sufficiently account for his memory difficulties.

While no treating physician reported memory difficulties and Simpson did not originally claim memory problems, the ALJ was still required to consider the medical findings of the consultative examiner, which are consistent with: (1) Simpson's hearing testimony that his wife kept up with his medications for him (R.

6

at 39); and (2) his and his wife's numerous reports, in the disability paperwork, that Simpson had memory problems and needed his wife's help in remembering to take his medications (R. at 166, 173, 176, 178, 192, 195, 204). While none of Simpson's treating physicians reported any memory difficulties, they are not mental health providers, and there is no evidence they ever considered or evaluated his memory problems. The ALJ's RFC does not make sufficient allowance for Simpson's memory difficulties, which are supported by the record.

Thus, the Court concludes that substantial evidence does not support the ALJ's RFC determinations that: (1) Simpson has the ability to stand and/or walk for six to eight hours per day, and (2) Simpson's memory issues, as identified and described by the consultative examiner, did *not* rise to the level of a significant limitation that should have been included in his RFC.

### B. The ALJ's Hypotheticals to the Vocational Expert

Simpson contends that the hypothetical questions posed to the VE failed to capture the consequences of his impairments. Because the ALJ's RFC determination was deficient, the hypotheticals are also deficient.

### C. Conflict Between the Vocational Expert Testimony and the DOT

Finally, Simpson argues that the ALJ should have addressed with the VE the apparent conflict between his testimony and the *Dictionary of Occupational Titles* ("DOT").

The VE testified that Simpson could work as: a molder press operator (DOT No. 556.685-022); a packing-line worker (DOT No. 753.687-038); or a marking clerk (DOT No. 209.587-034). Each of these positions requires at least frequent reaching, handling, and fingering according to the *Selected Characteristics of Occupations Defined* ("SCO"), a companion volume to the DOT.

The ALJ limited Simpson to using his left hand as an assistive device. The VE stated that a worker could perform these jobs as long as the worker had full use of the dominant extremity. (R. at 50–51). This statement conflicts with the physical demands listed in the SCO.

When expert testimony conflicts with the DOT, the DOT controls. *Jones v. Astrue*, 619 F.3d 963, 978 (8th Cir. 2010). The DOT can be rebutted with VE testimony that shows that a particular job can be performed by the claimant. *Id.* The DOT description for packing-line worker states that a worker "[o]pens or closes buckles, snaps fasteners together, inserts laces in eyelets, and ties loops (frogs) around buttons." The description for molder press operator states that the worker will clean a machine using hand tools. A marking clerk "[t]ies, glues, sews, or staples price ticket[s]" onto various articles. The VE did not adequately explain how such tasks can be performed without full use of both upper extremities. The ALJ should have elicited further testimony from the VE to explain this

8

inconsistency and how Simpson could perform such work, even though he was only able to use his left hand as an assistive device.

### III. Conclusion

For the foregoing reasons, the Court finds that the ALJ's decision is not supported by substantial evidence. On remand, the ALJ is instructed to reevaluate Simpson's credibility and obtain a consultative evaluation regarding Simpson's exertional limitations. The ALJ is further instructed to fully consider Simpson's mental limitations in determining his RFC and to fully resolve any conflicts between VE testimony and the DOT.

It is so ordered this 22nd day of July, 2016.

_____
UNITED STATES MAGISTRATE JUDGE